## The Allegheny County Workhouse *versus* Moore.

1. Unless the individual members of a corporation are authorized to do so they cannot bind it by any express promise, nor can corporate engagements be implied from their unauthorized and unsanctioned acts or declarations.

2. Corporate rights are not to be frittered away by loose and unauthorized declarations, made by persons who, at the time, had no authority to bind the corporation; and this principle applies as well to individual directors and employees of the corporation as to strangers.

October 12th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1880, No. 198.

Case by Basil D. Moore against the Allegheny County Workhouse and Inebriate Asylum.

The managers of the defendant institution were made a corporation and body politic by an Act approved the 23d of March 1872, the first section of which provides that the managers shall be a corporation and body politic in law, by the name, style and title of the Allegheny County Workhouse and Inebriate Asylum, and by that name shall have perpetual succession, with power to make and use a common seal and to change the same at pleasure, to establish, erect and manage the workhouse and asylum in the county of Allegheny, to make contracts, to sue and be sued, and by that name and title be capable in law of purchasing, selling, leasing and holding real estate in the name of Allegheny county for the use of said corporation, that may be necessary in carrying on the operations of the institution and to the profitable employment of the inmates. The board of managers consists of five citizens of the county of Allegheny, annually appointed by the inspectors of the Allegheny county prison. At the time of the alleged employment of the plaintiff by the said corporation, the board of managers consisted of the following-named citizens, viz., Hugh McNeil, president, James P. Fleming, George W. Hailman, C. J. Schultz and Dr. Thomas Shaw. John L. Kennedy was superintendent.

The plaintiff, a barrel broker, alleged that in the month of October 1877, he was employed by defendant to sell or procure a purchaser for all the barrels the defendant would manufacture during the year 1878, and that, in pursuance of said employment he did procure a purchaser for all of the barrels it would manufacture during that period. The defendant denied the employment of the plaintiff. The latter, to support his claim, testified that Hugh McNeil, the president of the board of managers, and John L. Kennedy, superintendent of the defendant, authorized him to sell the barrels, and, in pursuance of the authority thus given, he went to Charles Lockhart, president of the Standard Oil Company, and tried to get him to purchase the barrels for the

[Allegheny County Workhouse *v.* Moore.]

year 1878 at $1.30; Lockhart said it was too high, and that he would not give that price; Moore then asked him what he would say at $1.25; he said he would consider it, and consult others about it. This Lockhart communicated to the superintendent by letter of November 13th 1877, requesting him to submit it to the board, which he did, but the board took no notice of or action on it; no answer was sent to plaintiff.

On the 19th of November 1877, Moore wrote another letter to the superintendent, stating that he had seen Lockhart, and that he would say yes, if barrels were offered at $1.20, and demanding a positive answer on Wednesday, "yes or no." The superintendent submitted it to the board, when the following action was taken in regard to it, as appears by the minutes of the board of that date, to wit: "A proposition was received from B. D. Moore, in relation to a contract for supplying him with barrels during the coming year. It was on motion referred to monthly committee, with power to act." The monthly committee consisted of Hailman, Schultz and Fleming. No answer was made to the letter, or further notice taken of it than what appears in the above minutes. The board met on December 4th 1877, and the committee in regard to making contract for barrels was continued, with power to act. This committee, on December 18th 1877, reported to the board of managers as follows, viz.: "The committee in regard to contracting with the Standard Oil Company for barrels, say "that they had agreed to contract with them to furnish 4000 barrels per week, during the coming year, at $1.20 per barrel, without any commission, the Standard Company to have the privilege of furnishing iron, if at as low a price as can be had elsewhere. The iron to be of Pittsburgh manufacture. All the conditions about delivering to be the same as last year, except the barrels at Standard, 1 and 3, and at Eagle and Petrolia refineries, to be delivered in building, instead of on wharf." The report was accepted, approved, and the superintendent, with the committee, was instructed to enter into a contract with the Standard Company in accordance with the above report. In pursuance of the authority of the board, the above committee, in connection with the superintendent, entered into a contract with the Standard Company for the sale of all barrels made during the year 1878, at $1.20 per barrel. The defendant below had been, through barrel brokers, selling its barrels to the Standard Company (every year) for several years prior to 1877, knew of its existence and the fact that it was yearly in need of barrels, so that what the plaintiff did the defendant alleged was not instrumental in introducing the Standard Company to the defendant, and what he did was done without authority from the defendant, as those whom he alleged employed him had no authority to do so. Both McNeil and Kennedy denied positively that they had

[Allegheny County Workhouse v. Moore.]

ever employed him to sell the barrels of 1878, or told him that they were authorized by the board to do so.

At the trial the plaintiff being on the stand, and having testified that Mr. Hailman was one of the managers, that he was then deceased, went on to state what he had said to him (the witness) when defendant's counsel objected to declarations of Mr. Hailman, as incompetent and irrelevant. Objection overruled. (1st assignment of error.)

The plaintiff submitted, inter alia, the following point, which the court affirmed:

2. That if they believe from the evidence that Moore, the plaintiff, was employed by the defendant to find a purchaser for the barrels of the defendant, 208,000, for delivery during the year 1878; that he procured a party who was willing to give $1.20 per barrel, and that the defendant afterwards closed the contract with said party at that price, this is sufficient to warrant them in finding that the plaintiff was the procuring cause of the sale, and if they so find, the plaintiff is entitled to recover. (7th assignment.)

The following points of defendant, which the court refused, constituted the second and third assignments of error respectively:

1. That under all the evidence in the case, the verdict should be for the defendant.

2. That the plaintiff having failed to show that either Kennedy, the superintendent, or McNeil, the president of the board, had any authority to make the contract claimed, there can be no recovery.

Verdict for plaintiff for $2749.76, and after judgment defendant took this writ, and alleged that the court erred as set forth in the above assignments of error.

*S. H. Geyer* and *W. B. Rodgers*, for plaintiff in error.—The defendant, being a public corporation, operated by a board of managers, consisting of five citizens, who are empowered by its charter to make contracts and transact all its business, cannot be bound by a contract unless the board has entered into it or authorized it to be entered into: Cooper & Grove *v.* Lampeter Township, 8 Watts 128; Allegheny Co. *v.* Leckey, 6 S. & R. 170. They never exercised the power, as far as the plaintiff was concerned. They had nothing to do with him in regard to the matter. It cannot be possible that they should be estopped under the circumstances from selling to Lockhart without making the defendant liable for the commissions claimed by the plaintiff, about $2600. He volunteered the information, and if any advantage was given the defendant by reason thereof, he cannot claim compensation.

*J. M. Stoner*, for defendant in error.—All that is required to entitle a broker to his commissions is, that he bring the parties

together and that they enter into a contract of purchase and sale: Haines v. Begner, 9 Phila. R. 51; Clendennon v. Pancoast, 25 P. F. Smith 213; Reed v. Reed, 1 Norris 420; Keys v. Johnston, 28 P. F. Smith 42. The sale was completed by the principal on the very terms submitted by the broker, and brings it within the ruling of the last cited case. The evidence was abundantly sufficient to warrant the court in referring the proof of Moore's employment as broker to the jury: Valentine v. Packer, 5 Barr 333; Union Refining Co. v. Bushnel, 7 Norris 89.

Mr. Justice STERRETT delivered the opinion of the court, October 25th 1880.

It must be conceded that the plaintiff below had no right to recover without proving to the satisfaction of the jury, by competent and sufficient testimony, that he was employed by the corporation defendant to sell or procure a purchaser for the barrels it would manufacture during the year 1878, and that, in pursuance of such employment, he either sold the barrels or procured a purchaser for them. His action was grounded solely on these allegations of fact, all of which were denied by the defendant; and, of course, the burden of making out his case was on him. He endeavored to establish the fact of his employment by proving what had been said by the president of the board of managers, by one of the members of the board and by the superintendent of the workhouse, each separately and on different occasions. He utterly failed to show that any corporate action was had by the board, by virtue of which he was employed or by which the power to employ him was delegated to any member of the board or to the superintendent. The testimony on this point tended rather to negative the fact of any such action on the part of the board.

By the Act of March 23d 1872, the board of managers, composed of five citizens of the county, was made a public corporation by the name of "The Allegheny County Workhouse and Inebriate Asylum," with full power and authority to establish, erect and manage the institution, to make contracts, sue and be sued, and generally to do whatever is necessary in conducting its operations and providing profitable employment for its inmates. The board of managers was thus invested with important corporate powers, some of which, in their exercise, require consideration, deliberation and judgment. Where such is the case, "all should be convened, because the advice and opinions of all may be useful, though they do not unite in opinion:" In re Turnpike Road, 5 Binn. 481; Commissioners of Allegheny v. Leckey, 6 S. & R. 166. It is not to be presumed that a matter so important as the sale of an entire year's product of the barrel factory connected with the institution amounting to over two hundred thousand barrels, would not be acted on by the managers in their corporate capacity, or be dele-

[Allegheny County Workhouse *v.* Moore.]

gated, in unmistakable terms, to some one else with authority to act for them. There was no competent and sufficient evidence of such action in this case resulting in the employment of the plaintiff below. It is true, he testified, in substance, that the president of the board said they wanted him to sell their barrels for the year 1878 ; that the superintendent said he was instructed by the board to see him and request him to get the best offer he could for their barrels, and communicate the result in writing to the board; and that another member of the board, since deceased, told him on another occasion " that they had considered the matter, and if he could get $1.25 per barrel, to close the matter at once." He was contradicted by each of the surviving parties to the two first-mentioned conversations; but assuming that these individual declarations and statements were made as testified to by him, what do they amount to without proof of authority to make them ? Such authority was denied, and there was no evidence that either of the parties referred to was empowered by the board to employ the plaintiff or make any such statements. Unless they are authorized, the individual members of a corporation cannot bind it by an express promise, nor can corporate engagements be implied from their unauthorized and unsanctioned acts or declarations. The acts or declarations of a director in a corporation will not bind or in any manner affect it unless they are shown to be within the scope of his ordinary powers or of some special agency: Angell and Ames on Corp., sect. 239 ; Soper *v.* The Buffalo & Rochester Railroad Co., 19 Barb. 310. As we had occasion to say in a recent case, corporate rights are not to be frittered away by loose and unauthorized declarations made by persons who at the time had no authority to bind the corporation ; and this principle applies as well to individual directors and employees of a corporation as to strangers. Nor is there any hardship in this, because, as is said in Cooper *v.* Lampeter Township, 8 Watts 128, " every person is supposed to know the restrictions on the power of the officers of a corporation of a public nature and the extent of their authority."

It follows, from what has been said, that the learned judge of the Common Pleas should have affirmed the first and second points of the defendant below, which form the subjects of the second and third assignments, and should have refused the second point of the plaintiff, which is covered by the seventh assignment. The first assignment of error is not sustained. The deceased manager, whose declarations were proved, was not a party to the alleged contract within the meaning of the Act of 1869. His relation to the corporation was rather in the nature of an agency, and if it had been shown that he was authorized by the board of which he was a member to employ the plaintiff, his declarations, while acting within the scope of his authority, would have been competent evidence ; but as we have already said, there was nothing in the testi-

[Allegheny County Workhouse *v.* Moore.]

mony from which the jury could fairly and reasonably find that either of the parties with whom the plaintiff testified he had conversations, was authorized by the board to employ him. It is true, a committee of three was appointed by the board on November 20th 1877, but there was no testimony as to any action having been taken by that committee in relation to employment of the plaintiff. The remaining assignments are not sustained ; but for reasons already given, the judgment should be reversed on the second, third and seventh specifications of error.

Judgment reversed.